George HADGES, Plaintiff,

v.

YONKERS RACING CORPORATION, Defendant.

No. 93 Civ. 8343 (GLG).

United States District Court, S.D. New York.

March 14, 1994.

Bleakley, Platt & Schmidt by Frederick J. Martin, William P. Harrington, John F. Martin, White Plains, NY, for defendant.

William M. Kunstler, New York City, for plaintiff.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This is plaintiff George Hadges's third attempt to compel the Yonkers Racing Corporation ("YRC") to allow him to drive and train horses in harness races at the Yonkers Raceway ("the Raceway"). He claims YRC's refusal to allow him to utilize his state-issued licenses at Yonkers without sufficient procedural protections violated his due process rights under the Fourteenth Amendment.

## I  FACTS

Plaintiff was licensed in 1972 by the New York State Racing and Wagering Board ("the Racing Board") to own, train and drive harness race horses. Although he claims to have had a "spotless record" until 1986 when he was charged with a "technical violation" at Roosevelt Raceway, that is clearly not the case. In 1974, his license was suspended and revoked because he failed to disclose four prior criminal arrests in his original license application. His license was denied the following year and not ultimately restored until 1976.

The incident at Roosevelt Raceway in 1986 was far from technical. The Racing Board found that the plaintiff had illegally signalled and passed wagering information to a member of the betting public at the rail while he was taking his harness race horse to the starting line. The Racing Board also found that his horse behaved erratically during the race, interfering with the other horses, and that the horse's number he called out did, in fact, win. The plaintiff testified under oath and denied every aspect of the charges in contradiction to the testimony of Roosevelt Raceway security personnel. The finding against him, therefore, implicitly rejected the truthfulness of his testimony.

The proceedings following the Roosevelt incident were not completed until 1989 when plaintiff was suspended for six months. After his license was restored, he attempted again to obtain privileges at the Yonkers Raceway which refused to accept him. The Raceway is one of six privately owned and operated harness racetracks licensed to conduct harness racing in this state. (A seventh, the Roosevelt Raceway, at which the 1986 infraction occurred, has since closed.) We are told that the Rooney family which owns the Yonkers Raceway has invested $65,000,000 in it. It is alleged, and the court so finds, that the Raceway has a vital interest in preserving the integrity of the Raceway and the honesty of the competition in the races.

The plaintiff's first attempt to compel the Raceway to give him privileges was filed before this court in 1989, *Hadges v. Yonkers*

*Racing Corporation*, 733 F.Supp. 686 (1990). As with the instant case, the plaintiff moved for a temporary injunction and the defendant cross-moved to dismiss. This court found that Yonkers Raceway was a private operation and, therefore, the court did not have jurisdiction over plaintiff's civil rights claim under 42 U.S.C. § 1983 because there was an absence of government action. The plaintiff now contends that that action should be reinstated claiming there was a fraud upon the court. He points, in particular, to two footnotes in this court's decision, one of which referred to the Meadowlands Raceway in New Jersey as an alternate track within the New York metropolitan area where the plaintiff could work. That reference was not germane to the court's decision and was simply in response to the plaintiff's claim that the Yonkers Raceway is the only harness track in the New York metropolitan area.

The other footnote (fn. 10), however, was pertinent to the instant action and it stated:

> 10. We admit that proof that other tracks in the state followed YRC's decision could establish state action since YRC's decision, in effect, would result in the de facto revocation of plaintiff's license. In fact, one of the principal reasons behind the conclusion that decisions by the New York Racing Association ("NYRA") are state action is the fact that NYRA, a not-for-profit-association operating New York's thoroughbred tracks, can preclude parties from working at virtually all of New York's thoroughbred tracks. *See infra.*

This court's decision was affirmed by the Second Circuit in *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, *cert. denied*, 499 U.S. 960, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1990). The Second Circuit did not comment on the possibility that a showing that other tracks would be governed by the Raceway action might establish state action and federal jurisdiction, *except to note that "Hadges offers us no credible evidence supporting such a de facto revocation." Id.* at 1084.

Although it was not revealed in plaintiff's moving papers, we find that plaintiff commenced a subsequent action in 1992 in the Supreme Court of the State of New York, County of Westchester. The complaint had several causes of action: among them, a claim of conspiracy among all the harness tracks in New York State to blackball the plaintiff from harness racing and a claim of a violation of New York State's anti-trust laws (the Donnely Act) by virtue of the tracks' concurrent actions.

In a decision filed on December 4, 1992, Supreme Court Justice Vincent Gurahiam dismissed the entire case finding, *inter alia*, that it was within the discretion of Yonkers Raceway whether to allow plaintiff privileges at its facility since the harness race tracks "are vested with an ordinary business discretion and/or contractual right to preclude individuals from use of the facilities." *Hadges v. Yonkers Racing Corp.* decision at 4. The court also found that the state's statutory scheme concerning the racetracks (set forth in McKinney's Title 47A § 314) preempts application of the Donnely Act to the plaintiff's situation. That decision is presently on appeal in the New York State Appellate Courts.

## II DISCUSSION

While his state appeal is still pending, the plaintiff has filed this third action seeking, in essence, to reopen his federal claim of a civil rights violation based upon two arguments related to the footnotes in this court's earlier decision. Presently before the court are plaintiff's motion for preliminary injunction and defendant's cross-motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(c).

█ First, plaintiff contends that our earlier decision was based upon the fact that the Meadowlands was available as an alternate track where plaintiff could work. In 1992, the Meadowlands barred plaintiff from working there. It did this, at least in part, because of the action several years earlier in which Yonkers Raceway refused to grant privileges to the plaintiff. In 1993, Hadges sued the Meadowlands in the United States District Court in New Jersey. He obviously had a stronger case against the Meadowlands because it, unlike YRC, is a state operation and as such must be required to offer due

process to applicants rather than exercising private business judgment. That case was rapidly settled, and plaintiff's right to drive, train and own harness race horses at the Meadowlands was restored. However, plaintiff points out that he lost privileges at the Meadowlands for a year and seeks to put the blame for that on the earlier action of the Yonkers Raceway. Plaintiff argues that defendant's claim in the 1989 federal court case that the Meadowlands was an available track constituted a fraud on the court.

We reject that argument for several reasons. As noted earlier, the availability of the Meadowlands in New Jersey was not an essential aspect of this court's earlier decision. Moreover, the fact that the New Jersey authorities would temporarily ban the plaintiff several years later was not something reasonably foreseeable to anyone at the time we granted defendant's motion for summary judgment. Indeed, Yonkers Raceway submits the names of a number of drivers who had been denied privileges at Yonkers but were allowed to race at the Meadowlands and elsewhere.

Plaintiff's second argument is that YRC's decision to bar plaintiff from racing at Yonkers Raceway served as a *de facto* revocation of his state racing license because the other harness racing tracks would follow YRC's lead and bar him from their facilities as well. Essential to the instant case is plaintiff's claim that there is a secret agreement among all of the trotting tracks that barring a licensee from one will result in the applicant being barred from all. This is the same conspiracy argument which failed to succeed in the New York State Courts.

As noted, plaintiff claims that he has been banned from each of the other five New York harness tracks (*i.e.,* Batavia Downs, Buffalo Raceway, Monticello Raceway, Saratoga Raceway, and Vernon Downs). He claims to have made written application to each of them and not to have had a response. We find not only that he has failed to make any colorable support for his claim of universal state exclusion but that, indeed, the uncontested facts are to the contrary. The defendants have submitted proof that, with a single exception, none of the other tracks have

any recollection of receiving any application from Hadges. The single exception is Monticello Raceway where, in fact, Hadges had racing privileges in 1991 and 1993. (His privileges in 1991 were suspended for a brief time for a minor infraction.) Indeed, he last raced at Monticello in November 1993, a month before he filed his moving papers claiming he had not worked in four years.

■ When seeking a preliminary injunction, the plaintiff must show 1) irreparable harm and 2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping toward the party requesting injunctive relief. *Jackson Dairy v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979).

■ We clearly find no basis for granting a preliminary injunction which, we note, would grant plaintiff the ultimate relief which he seeks in the case thereby altering the status quo. Plaintiff has failed to demonstrate either a probability of success on the merits or even sufficiently serious questions to make them a fair ground for litigation. Moreover, we believe summary judgment must be granted.

■ While defendant argues that *res judicata* and collateral estoppel from the earlier federal litigation should bar the instant action, we believe that if plaintiff were able to demonstrate collusion among the New York State harness tracks, and his inability to establish that fact in the earlier litigation, he might be able to evade the earlier federal judgment. He has, however, as noted above, completely failed in that attempt. In addition, the state case rested upon the very same claim and *was* decided on the merits rather than upon jurisdiction. That decision is clearly a bar to the instant litigation. To the extent that it is on appeal and, therefore, not to be considered a final judgment, the court could simply abstain in this case pending the outcome of that litigation. Under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the issues raised in the state proceeding clearly implicated important state interests and the plaintiff had the opportunity to raise all constitutional

challenges. Consequently, we grant the defendant's motion for summary judgment.

 There remains for consideration only the defendant's application for sanctions under Rule 11. As we have noted, the current action lacks any substantial factual basis. We do not believe, however, that it was so frivolous as to warrant Rule 11 sanctions under the recently liberalized standards. We are, however, quite concerned over the attempt of the plaintiff and his counsel to indicate that he had not raced in four years when, in fact, he had privileges at Monticello in both 1991 and 1993. (The plaintiff does point out that his earnings at Monticello were minimal.) He has made matters worse by attempting to strengthen his claim of state involvement alleging that he was scratched from driving Me Gotta Bret on October 31, 1989 by the judges of the racing board. (October of 1989 was after the end of his suspension as a driver and at the time when he was seeking to have Yonkers reinstate him.) The document he submitted to establish this was undated. The defendants have submitted overwhelming proof that the event described did *not* occur at that time but rather took place in November 1987 while the plaintiff was under suspension.[1] This is an additional flagrant misrepresentation to the court and one that suggests the need for sanctions, certainly against the plaintiff and possibly against his counsel, William M. Kunstler. We note, however, that this final bit of proof came in the reply affidavit on the motion to dismiss filed in January so that plaintiff and his counsel were not afforded, as of right, an opportunity to respond. As it pertains to the application for sanctions, plaintiff will be given ten days from the date of the filing of this decision (plus three days for mailing) to submit any further papers he may wish on the sanction issue.

The entry of judgment will be delayed pending disposition of the sanction issue.

SO ORDERED.

---

1. The suspension was then stayed pending a hearing demanded by Hadges which, as noted above, was not concluded until early 1989.