Stephanie L. THOMAS, Plaintiff

v.

TREASURY MANAGEMENT ASSOCIATION, INC., Defendant.

Civ. No. PJM 92–3409.

United States District Court, D. Maryland.

Nov. 3, 1994.

Joseph D. Gebhardt and Gregory E. Gaskins, Silver Spring, MD, for plaintiff.

Donna Suzanne Brennan and Thomas Longley McCally, Rockville, MD, for defendant.

## OPINION

MESSITTE, District Judge.

### I.

The Court considers in this case the changes wrought by the 1993 amendments to Federal Rule of Civil Procedure 11 with regard to sanctions. While certain principles were carried forward from prior practice, the 1993 amendments gave sanctions a new look:

1) Motions for sanctions are to be filed sparingly.

2) Counsel and/or pro se litigants are required to communicate with one another to anticipate and attempt to resolve pleadings and discovery differences before they occasion the need to consider sanctions.

3) In particular, a party who objects to a pleading, motion or paper has an obligation to send notice to his or her opponent giving the opponent an opportunity to withdraw the offending item. If the pleading is withdrawn in timely fashion, the matter is at an end and sanctions become unavailable; a "safe harbor" is provided. But if, following notice, the opposing party persists and it eventuates that that party's pleading was unjustified, sanctions may well be appropriate.

4) The keynote is cooperation and simple solutions, not paperwork and unnecessary expense to clients.

The present suit was filed in federal court on December 7, 1993, after the effective date of the 1993 amendments. Defendant, who prevailed on a Motion for Summary Judgment, appears to have lost sight of the peace treaty that took effect with regard to sanctions on December 1, 1993. It is still in a combat mode over what it claims was an unfounded count in Plaintiff's multi-count employment discrimination suit. Defendant thus asks, by way of post-trial motion, for attorney's fees based on Rule 11, as well as Rule 26 and 28 U.S.C. § 1927.

The Court concludes that, while Plaintiff's counsel obviously could and no doubt should have been more diligent in withdrawing the flawed count from her complaint, the more important issue is that counsel who object to such pleading improprieties as occurred here should understand the proper procedure for addressing those improprieties when they arise.

### II.

Plaintiff Stephanie Thomas, an African American female, was employed by Defendant Treasury Management Company, Inc. as a conference planner. When she was terminated from her employment in October, 1992, she contended that it was because of impermissible considerations of race and sex. Defendant maintained that Ms. Thomas was discharged because she mismanaged her duties as a conference planner at a particular conference in San Francisco. While Plaintiff could point to no direct evidence of discrimination, she argued that as the only black female employee who was discharged, and discharged moreover in summary fashion, an inference of discrimination could be drawn. Although she attempted to argue that white employees would not have been discharged in as embarrassing a fashion as was she, the Court concluded on Defendant's Motion for Summary Judgment that Plaintiff had not in fact adduced examples of persons sufficiently similarly situated as to take her beyond the point of summary judgment. Accordingly the Court granted Defendant's Motion for Summary Judgment.

What is significant for purposes of Defendant's Motion for Sanctions is the manner in which Plaintiff pleaded her case. Her complaint proceeded in two counts, one for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and the second for violation of 42 U.S.C. § 1981, which prohibits discrimination based on race in, among others, employment contracts. As it happened, Plaintiff had never filed a complaint with the Equal Employment Opportunity Commission and in consequence was barred from going forward with the Title VII claim. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Defendant seizes upon this omission as the basis for its request for sanctions.

Among the several pro forma answers Defendant filed to the complaint was one to the effect that Plaintiff had "not exhausted her administrative remedies." In addition, shortly after the filing of the complaint, Defendant commenced discovery which included an interrogatory asking about the filing of an EEOC claim, buttressed by a document request in which it sought a copy of the EEOC determination. Plaintiff, in timely fashion, responded that there had been no EEOC filing, hence she had no written determination to supply. Nonetheless, for reasons not altogether clear, Plaintiff let her original complaint stand with the Title VII count in it.

Defendant apparently did not thereafter seek by any informal means to have Plaintiff drop the flawed count. Instead defense counsel proceeded immediately to file a Motion for Summary Judgment with regard to both counts of the Complaint, arguing in particular that the Title VII count was fatally defective because of the lack of the EEOC filing. As soon as Plaintiff's counsel received Defendant's Motion for Summary Judgment, they communicated with defense counsel indicating that they did not intend to go forward with the Title VII count and that Plaintiff wished to withdraw the count, a request, however, that defense counsel refused to consent to. When, at oral argument, the Court

advised Plaintiff that it would rule on the Title VII claim despite Plaintiff's request to withdraw it, Plaintiff conceded that Defendant was entitled to summary judgment on the claim and the Court granted summary judgment as to it.

Defendant, in asking for sanctions, now argues that:

1) Plaintiff knew she had no Title VII claim since she had not filed an EEOC claim;

2) Plaintiff was on notice that Defendant opposed her on this ground because Defendant's answer so stated;

3) Plaintiff required Defendant to go to the trouble of filing an interrogatory and a document request concerning the EEOC claim; and

4) Plaintiff put Defendant to the further expense of filing for summary judgment with regard to the Title VII claim.

All this, says Defendant, demonstrates that Plaintiff's counsel failed to properly investigate the matter, and therefore Plaintiff and her counsel should be sanctioned by having fees paid to Defendant's counsel. The fees Defendant seeks, it may be noted, total approximately $65,000.[1]

Plaintiff's counsel, in response, urges the Court to consider that defense counsel never called or wrote to have them drop the Title VII claim and, more importantly, that defense counsel never gave the requisite formal notice of their intent, under Rule 11, to pursue sanctions if the claim were not dropped. Plaintiff's counsel further points out that Count II of the complaint, under 42 U.S.C. § 1981, remained viable without regard to the filing of an EEOC complaint and thus, while that count may also have ultimately gone out on summary judgment for lack of sufficient evidence, the filing of the count and Plaintiff's pursuit of discovery with respect to it were unquestionably permissible.

Against this background, the Court reviews the Defendant's Rule 11, Rule 26 and 28 U.S.C. § 1927 claims.

1. Defendant has not specified which portion of its fees and costs were incurred relative to Count I of the Complaint (Title VII) and which relative to Count II (42 U.S.C. § 1981), a distinction that would be relevant even if the Court were to find the filing of the Title VII count sanctionable. *See* discussion in text, *infra.*

## III.

Since December 1, 1993, Rule 11, in pertinent part, has mandated that every "pleading, written motion, and other paper" be the product of an "inquiry reasonable under the circumstances ... (that)

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; ... (and that)

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

Fed.R.Civ.P. 11(b).[2]

The rule also provides that "(i)f, after notice and a reasonable opportunity to respond, the court determines" that one of these provisions has been violated, it "may, subject to ... conditions ..., impose an appropriate sanction" upon the attorneys, law firms or parties responsible for the violation. *Id.*, Subsection (c).

The rule goes on to state how sanctions may come about—first by motion, alternatively on the Court's initiative. The procedure for filing a motion for sanctions is addressed in detail:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable

expenses and attorney's fees incurred in presenting or opposing the motion....

*Id.*, Subsection (c)(1)(A).

The rule discusses the nature of sanctions, including limitations upon their imposition:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

*Id.*, Subsection (c)(2).

Finally, Subsection (d) of Rule 11 makes it clear that the rule does not apply to "disclosures and discovery requests, responses, objections and motions that are subject to the provisions of Rules 26 through 37."

Defendant cites *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) for the proposition that sanctions are appropriate when a party pursues a case after it becomes clear that the case is without merit, as well as *Blue v. U.S. Department of Army,* 914 F.2d 525 (4th Cir. 1990) for the proposition that "(d)ogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail." 914 F.2d at 537, quoting *In re TCI, Ltd.,* 769 F.2d 441, 445 (7th Cir.1985).

As Plaintiff correctly points out, however, the aim of Rule 11, as amended effective December 1, 1993, was "to remedy problems that have arisen in the interpretation and application of the 1983 revision of the rule." Fed.R.Civ.Proc. 11, Notes of Advisory Committee on Rules, 1993 Amendment (hereinafter "Notes").[3] The revision places "greater

---

**2.** Defendant, in its motion, actually cites to *former* Rule 11 which required that the document be "well grounded in fact and ... warranted by existing law ... (and that it not be) interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in

the cost of litigation." *See* Fed.R.Civ.P. 11, as amended eff. August 1, 1983.

**3.** One commentator has summarized those problems thus:

constraints on the imposition of sanctions and should reduce the number of motions for sanctions presented to the court." *Id.*

To be sure, Subdivisions (b) and (c) of Rule 11 "restate the provisions requiring attorneys and pro se litigants to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions and other documents...." *Id.* It is also true that "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." *Id.* Even so, "(s)ubdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses." *Id.*

■ Additionally, Subsection (c) of Rule 11 makes it clear that the imposition of sanctions is discretionary with the Court, not mandatory. *See Knipe v. Skinner,* 19 F.3d 72 (2d Cir.1994).

■ Most importantly, as the Notes to the 1993 Amendment emphasize, the 21–day waiting period before filing a motion for sanctions is absolutely prerequisite:

> If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.... (U)nder the revision, timely

withdrawal of the contention will protect a party against a motion for sanctions.

*Notes, supra.*

■ Despite the fact that Defendant in this case alleges that Plaintiff's filing of her claims was frivolous, defense counsel took no steps to comply with Rule 11(c)(1)(A) to promptly place Plaintiff's counsel on notice of the alleged violation of the new rule. Instead, Defendant's counsel went straight ahead with discovery, filed a Motion for Summary Judgment, a Motion to Tax Costs and finally a Motion for Sanctions, all of which took time and presumably generated fees and costs.

A simple phone call or letter from Defendant's counsel might have accomplished the desired result of extinguishing the Title VII claim. Beyond that, formal notice of intent to file a motion for sanctions in the event that Plaintiff did not withdraw the count would almost certainly have spurred Plaintiff's counsel to action. As it is, the failure of Defendant's counsel to give that notice and to afford Plaintiff's counsel the benefit of the safe harbor provision of Rule 11(c)(1)(A) suffices to preclude its claim for sanctions at this time.

■ An additional point worth noting, in any event, pertains to the magnitude of the sanctions Defendant seeks, an amount exceeding $65,000. Defendant's prayer appears to be for its full attorney's fees, an altogether inappropriate request even if Plaintiff's actions regarding Count I had been found to be sanctionable. In the first place, the effect of such an award would be to shift costs in a manner inconsistent with the standards that govern the statutory award of fees, *see Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d

---

"In recent years, Rule 11 of the Federal Rules of Civil Procedure has come under tremendous scrutiny. It has been the subject of numerous articles in legal publications and has sparked much controversy within the legal profession. Critics have accused the Rule of having a deleterious effect on attorney-client relationships, relations between counsel, and the development of new law. Attorneys who have been sanctioned under the Rule frequently complain that it is not being applied in a uniform man-

ner and that basic principles of due process and fundamental fairness are being breached. This widespread malcontent has led to the formulation of a proposed amendment to the Rule." (Footnotes omitted)
Comment: "The Proposed Amendment to Federal Rule of Civil Procedure 11: Balancing the Goal of Deterrence with Considerations of Due Process and Fairness," 41 *Kansas L.Rev.* 199 (1992).

648 (1978). Moreover, as the Notes to the 1993 Amendment point out:

> Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty.

While attorney's fees may be warranted "under unusual circumstances," they "should not exceed the expenses and attorney's fees for the services directly and unavoidably caused by the violation of the certification requirement." *Id.* The Notes dispose directly upon the fact-pattern of the present case:

> If, for example, a wholly unsupportable count were included in a multi-count complaint or counterclaim for the purpose of needlessly increasing the cost to an impecunious adversary, any award of expenses should be limited to those directly caused by inclusion of the improper count, and not those resulting from the filing of the complaint or answer itself. The award should not provide compensation for services that could have been avoided by an earlier disclosure of evidence or an earlier challenge to the groundless claims or defenses.

*Id.*

Here, it is true, Plaintiff did not have a Title VII claim by reason of her failure to exhaust her administrative remedies. But the Civil Rights Act of 1991 amended 42 U.S.C. § 1981 to extend § 1981 protection to both discriminatory work place conditions and discriminatory discharges [4]; hence Plaintiff's pursuit of that cause of action was entirely fair and proper and could proceed wholly without regard to the filing of a complaint with the EEOC. With the exception of requesting the EEOC determination, virtually all the discovery requested with regard to the flawed Title VII count was fairly sought in connection with the Section 1981 count. In other words, the additional imposition upon Defendant by reason of the presence of the Title VII claim was relatively small and, at most, would be compensable at a minimal rate. Particularly is this true when considered in conjunction with another aspect of Rule 11—that "partial reimbursement of the fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources," *Notes*, a condition which appears to characterize the young Plaintiff in this case.

■ Finally, there is Defendant's suggestion that the Court's finding on the § 1981 count that Defendant held no racial animus toward Plaintiff calls for an imposition of sanctions against Plaintiff. Again Defendant fails to recognize the caution of the Notes to the 1993 Amendments:

> That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position.

*Id.*

Plaintiff put forth affidavits of witnesses who attested that she was a hard worker as to whom they heard no complaints. Although she attempted to demonstrate that other non-African American employees were allowed to spend less time on probation and received promotions over her, she was unable to convince the Court that those employees were similarly situated for purposes of suggesting pretext. Moreover while the Defendant was able to articulate a legitimate nondiscriminatory reason for discharging Plaintiff, it is also true that the manner of her termination was surprisingly harsh, even if justifiable. The Court did not and does not find that Plaintiff's action in this case was "frivolous, unreasonable, or without foundation." *See Christiansburg Garment Co. v.*

---

**4.** The amendment states that "(f)or purposes of this section, the term "make and enforce contracts" includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b), as added by the Civil Rights Act of 1991, 105 Stat. 1071 (1991). The clearly stated purpose behind this amendment, as articulated by Congress, was "to provide appropriate remedies for intentional discrimination ... in the work place" and "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Civil Rights Act of 1991, *Id.* Compare *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (restricting § 1981 to pretermination discrimination).

*EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); *Glymph v. Spartanburg General Hospital,* 783 F.2d 476 (4th Cir.1986).

For all these reasons, the Court finds that Rule 11 provides no basis for an award of attorney's fees to Defendant in this case.

## IV.

Defendant also bases its claim for sanctions on former Fed.R.Civ.P. 26(g), which dealt with the effect of an attorney's signing of discovery requests, responses and objections. In particular, Defendant argues that, while pursuing the Title VII claim, Plaintiff's counsel were certifying that Count I was "warranted by existing law," "not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation" and "not unreasonable or unduly burdensome or expensive." *See* Fed.R.Civ.P. 26(g), effective August 1, 1987. In response, Plaintiff simply suggests that Defendant's reliance upon Rule 26 to support its Motion for Sanctions is improper.

First and foremost, it is necessary to apply amended, not former Rule 26. New Rule 26, indeed new Rules 26 to 37, which like new Rule 11 became effective on December 1, 1993, make clear that they deal with sanctions for discovery abuses, *i.e.* failures to make discovery, non-disclosure and evasion and perhaps excessive discovery. Rule 11, on the other hand, is expressly inapplicable to such abuses. *See* Fed.R.Civ.P. 11(d).

The present case is hardly one involving discovery abuse. Plaintiff had no Title VII claim and counsel in effect admitted that to be so when they responded to the interrogatory and document request that there had been no EEOC determination. Non-disclosure, evasion or excessive discovery were never involved. When Plaintiff's counsel made this concession, there was no occasion for the Sturm und Drang of motions that followed. While Plaintiff's lack of diligence in the matter may merit no applause, neither does it call for sanctions under amended Rule 26.

## V.

Defendant seeks salvation in 28 U.S.C. § 1927, which permits a district court to award fees and costs where attorney conduct "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A finding of bad faith must precede any award of attorney's fees under this section. *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184 (3d.Cir.1989). The matter of sanctions is then entrusted to discretion of the District Court. *Thomas v. Capital Sec. Services, Inc.,* 812 F.2d 984 (5th Cir.1987).

Defendant's reliance on this provision is similarly misbegotten. For all the reasons previously stated, nothing Plaintiff or her counsel did multiplied pleadings "unreasonably and vexatiously." Article 28, § 1927 provides no basis for relief to Defendant.

## VI.

Finally, Defendant has filed a motion seeking costs in the amount of $8,234.87, pursuant to Fed.R.Civ.P. 54 and 28 U.S.C. § 1920.

Fed.R.Civ.Proc. 54(d)(1) provides in pertinent part that "(e)xcept when express provision therefore is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Title 28 U.S.C. § 1920 indicates what costs may be compensated, including filing fees, transcript fees necessarily obtained for use in the case, printing fees, and fees for exemplification and copies of papers necessarily obtained for use in the case. A prevailing party in a civil rights case is in the same position with regard to costs as prevailing parties generally. *See Goostree v. State of Tennessee,* 796 F.2d 854 (6th Cir.1986), cert. den. 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987). Defendant has submitted a motion for costs which include such expenses as these, as well as expenses for fees and disbursements in excess of $3,200 for such items as telecopier charges, phone charges, courier expense, and computer time and research.

While Rule 54(d)(1) provides that, after entry of final judgment, "costs shall be

**372**

allowed as of course to the prevailing party," the trial court possesses broad discretionary powers to allow or disallow them, *see Advance Business Systems and Supply Co. v. SCM Corporation,* 287 F.Supp. 143 (D.Md. 1968), cert. denied 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). This, however, does not permit a district court to order a losing party to reimburse a prevailing party for every expense the latter may have incurred. *See Dowdell v. City of Apopka, Florida,* 521 F.Supp. 297 (M.D.Fla.1981).

█ The Court finds that Defendant's costs incurred for fees of the clerk (here $140.00), and for deposition transcripts ($2,938.20), and for exemplification and copies of papers necessarily obtained for use in the case ($337.80), a total of $3,416.00, are reasonable and proper.

█ On the other hand, the cost of the wages of a paralegal to serve a subpoena ($266.00), for in-house photocopying ($1,307.20), and for the costs of computer research time, couriers, postage, telecopier, overnight delivery, and local transportation expenses are, in the Court's view, inappropriate. *See e.g., McIlveen v. Stone Container Corporation,* 910 F.2d 1581 (7th Cir.1990) (in-house photocopies for counsel's own use rather than for use in presenting evidence in court should be disallowed); *Roberts v. Charter National Life Ins. Co.,* 112 F.R.D. 411 (S.D.Fla.1986) (computer time/research not allowed as costs). Such costs must be deemed a component of the attorney's fee, not separately compensable items. *Levka v. City of Chicago,* 107 F.R.D. 230 (N.D.Ill. 1985).

Under the circumstances, the Court will award Defendant, as the prevailing party, costs in the amount of $3,416.00.