64 F.3d 213
 32 Fed.R.Serv.3d 728
 Michael ELLIOTT and Vivian Elliott, Plaintiffs-Appellees,
v.
Robert TILTON, etc., Marte Tilton, etc., Word of Faith World
Outreach Center, Inc., and Word of Faith World
Outreach Center Church, etc., Defendants,
Rhonda Johnson Byrd, Non-party-Appellant.
 No. 94-10810.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 15, 1995.
 
 Sidney Powell, S. Ann Saucer, Dallas, TX, for appellant.
 Gary Richardson, Dana Bowen, Richardson & Stoops, Dallas, TX, for appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before HIGGINBOTHAM and PARKER, Circuit Judges, and McBRYDE*, District Judge.
 ROBERT M. PARKER, Circuit Judge:
 
 
 1
 Non-party appellant, Rhonda Johnson Byrd, served as lead counsel for the defendants in the district court in the litigation underlying this appeal.[1] The district court sanctioned Byrd under Rule 11 and under its inherent authority based on motions filed and representations made in the district court. Byrd appeals. We find that the imposition of sanctions was improper under Rule 11 and that the district court failed to make the findings necessary to support an imposition of sanctions under its inherent authority. Therefore, we reverse in part, vacate in part, and remand for further proceedings consistent with this opinion as the district court deems necessary.
 
 I. FACTS
 
 2
 The plaintiffs brought this suit against the Tiltons and Word of Faith World Outreach Center claiming damages for fraud, breach of contract, intentional infliction of emotional distress, and conspiracy. Before the case was filed, an attorney representing the defendants in a similar suit in Oklahoma sent plaintiffs' counsel two one-page documents which appeared to be release forms signed by the Elliotts permitting Word of Faith to use their videotaped testimonial for broadcast on the "Success-N-Life" television program. The plaintiffs accepted that these documents were valid because they knew they had signed some type of release for Word of Faith testimonial producer Paul Pettite.
 
 
 3
 The case was filed in November 1992. The following month, the defendants, now represented by Byrd, filed a motion for summary judgment based in part on the contention that plaintiffs' claims were barred by the releases signed by the Elliotts. In addition, the defendants filed a motion for sanctions claiming that the releases rendered the lawsuit completely groundless. Finding that material issues of fact existed, the district court denied defendants' motions. At the time these motions were filed, Ms. Byrd had no reason to suspect that the releases did not in fact bear the true signatures of Michael and Vivian Elliott.
 
 
 4
 On October 18, 1993, Byrd's associate, John Kronenberger, spoke by telephone with Paul Pettite who had since left the employment of Word of Faith. During the conversation, Pettite admitted to Kronenberger that he had, at times, actually signed other people's names to releases when he had forgotten to get their signatures or when he could not find the signed releases. With regard to the Elliott releases, Pettite said he could not remember whether he had signed them and said he would need to see them to tell. Kronenberger told Byrd about this conversation shortly afterward.
 
 
 5
 At the time of this phone conversation, Pettite's deposition was scheduled for the next week. Subsequent to the conversation, the defendants obtained Pettite's agreement to testify at trial, and on October 22, 1993, with the agreement of plaintiffs' counsel, Byrd cancelled Pettite's deposition. Neither Byrd nor Kronenberger sent Pettite copies of the releases to determine whether he had signed them.
 
 
 6
 On December 2, 1993, the individual defendants again filed motions for sanctions against the plaintiffs, contending that the claims for breach of contract, intentional infliction of emotional distress, fraud, and conspiracy could not be justified against individual defendants with whom the plaintiffs admittedly had no personal contact. The briefs in support of these motions contained factual allegations regarding the releases purportedly signed by the plaintiffs. Specifically, in paragraph 9 of the briefs, it is contended that prior to the filing of this suit, the plaintiffs were provided with "the releases executed by the Elliotts, which render this lawsuit completely groundless." The motions and the briefs in support were signed by Rhonda Johnson Byrd. On December 6, 1993, Byrd also filed a list of exhibits which included the releases purportedly signed by the Elliotts.
 
 
 7
 On March 18, 1994, during defendants' preparation for trial, Byrd's associate Kronenberger met with Paul Pettite. Pettite examined the releases and identified them as releases he had signed personally, ruling out the possibility that the Elliotts had signed them. As a result, by letter dated March 22, 1994, Byrd informed the district court that defendants wished to withdraw the releases from their exhibit list. In addition, Byrd stated that "the release matter is hereby withdrawn as an issue by Defendants."
 
 
 8
 On April 5, 1994, the plaintiffs filed a motion for sanctions against defendants and defense counsel based on the designation of the releases as exhibits, and the "groundless" affidavits and pleadings without proper inquiry into the validity of the releases. The plaintiffs asked that the defendants' release defense be stricken and that defendants and defense counsel be ordered to pay plaintiffs' costs and attorneys' fees incurred as a result of the offending pleadings and affidavits.[2]
 
 
 9
 The district court took evidence regarding the plaintiffs' motion for sanctions during trial, April 7 to April 21, and at a post-trial hearing held June 27, 1994. On July 28, 1994, the district court issued a Memorandum Opinion and Order granting the plaintiffs' motion for sanctions under Rule 11 and under its inherent authority against defense counsel Rhonda Johnson Byrd. For conduct in violation of Rule 11, the district court ordered Byrd personally to pay attorneys' fees of $7,850 to plaintiffs' counsel as a sanction. Although the district court did not sanction Byrd monetarily for conduct beyond the Rule 11 violation, the court did find that Byrd also committed conduct sanctionable under the court's inherent powers. Byrd timely filed this appeal.
 
 II. DISCUSSION
 
 10
 Byrd appeals the district court's decision to award plaintiffs attorneys' fees under Rule 11 and its decision to sanction her under its inherent authority. Because different questions are raised with regard to the application of Rule 11 and the court's inherent authority, we will address them separately.
 
 
 11
 A. RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE
 
 
 12
 On appeal, Byrd argues that the district court's imposition of sanctions violated the letter and spirit of Rule 11. We review the imposition of sanctions under Rule 11 for abuse of discretion. A district court necessarily abuses its discretion in imposing sanctions if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. F.D.I.C. v. Calhoun, 34 F.3d 1291, 1297 (5th Cir.1994) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2460-61, 110 L.Ed.2d 359 (1990)).
 
 
 13
 Byrd contends, inter alia, that she is protected from sanctions under the "safe harbor" provision of Rule 11 as amended in 1993. As a threshold matter, we note that the district court did not address whether the 1993 amendments to Rule 11 would be applied in this case. By order of the Supreme Court, see 146 F.R.D. 404, the 1993 amendments to the Federal Rules of Civil Procedure, including substantial revisions of Rule 11, took effect on December 1, 1993, governing civil proceedings commenced after that date and, "insofar as just and practicable, all proceedings in civil cases then pending." The present case was commenced prior to December 1, 1993. However, the plaintiffs' motion for sanctions, and the conduct which the district court found sanctionable, came after the amendment's effective date. Byrd contends that the amended rule should be applied in this case, and plaintiffs do not argue to the contrary. Therefore, we find it "just and practicable" in the present case to apply Rule 11 as amended in 1993.
 
 
 14
 The amended rule provides, in relevant part:
 
 
 15
 (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
 
 
 16
 (1) How Initiated.
 
 
 17
 (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
 
 
 18
 * * * * * *
 
 
 19
 FED.R.CIV.P. 11(c) (as amended April 22, 1993, eff. December 1, 1993).
 
 
 20
 Under this provision, as amended, a motion for sanctions may not be filed until at least 21 days after service on the offending party.
 
 
 21
 If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.... [U]nder the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.
 
 
 22
 Id., Proposed Amendments to Federal Rules of Civil Procedure, advisory committee's notes, reprinted in, 146 F.R.D. 401, 591 (1993).
 
 
 23
 In the present case, the record indicates that plaintiffs did not serve their motion for sanctions on the defendants and defense counsel prior to filing. The "safe harbor" provision added to Rule 11 contemplates such service to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention. The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory. Plaintiffs did not comply with this procedural prerequisite. Therefore, the sanction and payment of costs and attorneys' fees ordered by the district court cannot be upheld under Rule 11.
 
 
 24
 We do not mean to indicate that defense counsel was necessarily shielded from all sanctions under Rule 11. Sanctions may be ordered if the court, on its own initiative, enters an order describing the offending conduct and directing the offending parties to show cause why Rule 11 has not been violated. FED.R.CIV.P. 11(c)(1)(B). This sub-section contains no "safe harbor" provision. However, in the present case, sanctions were imposed on motion of the opposing party and not on the court's own initiative. Because we find that the "safe harbor" provision of Rule 11(c)(1)(A) precluded the imposition of Rule 11 sanctions under these circumstances, we do not address whether the factual contentions included in defendants' filings after October 18, 1993 were based on an "inquiry reasonable under the circumstances" as required by Rule 11(b), or whether any of the costs and attorneys' fees Byrd was directed to pay were "incurred as a direct result of the [Rule 11] violation" as required by Rule 11(c)(2).B. THE COURT'S INHERENT AUTHORITY
 
 
 25
 Although the district court ordered monetary sanctions only under the authority of Rule 11, it nonetheless sanctioned Byrd's conduct under its inherent authority. The district court found Byrd's representations to the court to be disingenuous and misleading. The district court also found that Byrd's conduct of the case concerning the releases and production of certain video tapes had been deceptive.
 
 
 26
 We review sanctions imposed under a court's inherent authority for abuse of discretion. Chaves v. M/V Medina Star, 47 F.3d 153, 156 (5th Cir.1995). However, we have also noted that "the threshold for the use of inherent power sanctions is high." Id. (citing Reed v. Iowa Marine and Repair Corp., 16 F.3d 82 (5th Cir.1994)). "Indeed, the Supreme Court has cautioned that 'because of their very potency, inherent powers must be exercised with restraint and discretion.' " Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)).
 
 
 27
 More importantly, relevant to this case, this Court has held that "[i]n order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith'." Id.; R.T.C. v. Bright, 6 F.3d 336, 340 (5th Cir.1993); In re Thalheim, 853 F.2d 383, 389 (5th Cir.1988); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980) ("Similarly, the trial court did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers.").[3] Although the district court clearly indicated its displeasure at Byrd's conduct of this case, it failed to make a specific finding of bad faith. Because such a finding is required, we must remand for the district court to determine whether such a finding is appropriate.
 
 III. CONCLUSION
 
 28
 For the reasons discussed above, the district court's imposition of sanctions under Rule 11 must be REVERSED, its imposition of sanctions under its inherent authority must be VACATED, and this case must be REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 District Judge of the Northern District of Texas, sitting by designation
 
 
 [1]
 In the related appeal on the merits, No. 94-10809, we held that the judgment of the district court must be vacated and the case dismissed for lack of subject-matter jurisdiction. However, our determination that the district court lacked subject-matter jurisdiction over the underlying litigation does not affect the district court's order imposing sanctions. See Willy v. Coastal Corp., 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992)
 
 
 [2]
 The plaintiffs filed an amended motion for sanctions on April 26, 1994, after trial began, but the amendment did not change the purported basis for sanctions under Rule 11
 
 
 [3]
 Although application of this "bad faith" limitation outside the context of an order to pay attorneys' fees has been questioned, see Chambers, 501 U.S. at 58, 111 S.Ct. at 2140 (Scalia, J., dissenting); Thomas E. Baker, The Inherent Power to Impose Sanctions: How a Federal Judge Is Like an 800-Pound Gorilla, 14 REV.LITIG. 195, 199 & n. 15 (1994), it is nonetheless the law of the circuit and must be followed