**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EDWIN RECTOR; EDWIN RECTOR,
Trustee; EDWIN RECTOR 1995
CHARITABLE REMAINDER TRUST,
          *Plaintiffs-Appellants,*

v.

APPROVED FEDERAL SAVINGS BANK;
APPROVED FINANCIAL CORPORATION;
ALLEN D. WYKLE; STEPHEN R.
KINNIER,                                     No. 01-1191

          *Defendants-Appellees,*

          and

COOPERS & LYBRAND, LLP; PRICE
WATERHOUSE; PATRICK M.
BARBERICH; GRAY LAMBE,
                    *Defendants.*

Appeal from the United States District Court
for the Eastern District of Virginia at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-99-499-A)

Argued: June 6, 2001

Decided: September 11, 2001

Before WILLIAMS, KING, and GREGORY, Circuit Judges.

---

Affirmed by published opinion. Judge Gregory wrote the majority
opinion, in which Judge Williams joined. Judge King wrote a dissent-
ing opinion.

**COUNSEL**

**ARGUED:** Thomas Hunt Roberts, THOMAS H. ROBERTS & ASSOCIATES, P.C., Richmond, Virginia, for Appellants. Glen Michael Robertson, PAYNE, GATES, FARTHING & RADD, P.C., Norfolk, Virginia, for Appellees.

---

**OPINION**

GREGORY, Circuit Judge:

In this case of first impression, we must decide whether the 21-day "safe harbor" provision of Fed. R. Civ. P. 11 is a non-waivable rule of jurisdiction. We hold that it is not a jurisdictional rule and affirm the district court's assessment of sanctions.

I.

On April 9, 1999, Virginia attorney Edwin Rector ("Rector"), personally and as trustee for the Edwin Rector 1995 Charitable Remainder Trust ("the Trust"), filed suit against Approved Financial Corporation, Approved Financial Federal Savings Bank, Coopers and Lybrand, PriceWaterhouse Coopers, Allen D. Wykle, Stephen R. Kinner, Peter Coode, Patrick M. Barberich, and Gray Lambe (collectively "Approved"), seeking "at least 60 billion dollars" in compensatory damages and an additional 20 billion dollars in punitive damages. The suit arose from a 1995 agreement in which Rector and the Trust agreed to sell to Approved all of Rector's majority interest in First Security Federal Savings Bank. Closing occurred on September 11, 1996. Rector and the Trust claimed that the contract required Approved to pay "at least 20 billion dollars" more than the $3,157,743 purchase price.

On July 3, 1999, the district court dismissed Rector and the Trust's conspiracy, RICO, and fraud claims, finding that they failed to state fraud and RICO with particularity and that no private right of action existed for bank fraud under 18 U.S.C. § 1344. The order allowed Rector and the Trust to file an amended complaint, which they did on

August 10, 1999. Among other things, Rector and the Trust amended the complaint by changing the *ad damnum* clause from 60 billion dollars to "an infinite amount of money." On September 17, 1999, the district court granted Approved's motion to dismiss all claims.

On September 27, 1999, Approved filed a motion for sanctions under Fed. R. Civ. P. 11. The motion states that Approved served it on Rector and the Trust on June 11, 1999. In this appeal, though, Rector and the Trust contend that they did not receive the motion until September 27, 1999, in contravention of the 21-day "safe harbor" provision of Rule 11. Approved concedes that it "cannot now confirm the notice was [served] as intended." Appellees' Br. at 4 n.2. Rather, Approved states that

> [o]n June 11, 1999, [Approved] served [Rector and the Trust] with [its] Objections to Plaintiffs' First Request for Production of Documents, [its] initial Motion to Dismiss . . . and [its] Memorandum in Support of such motion. [It] also believed that the Federal Express package containing these three items also included a Notice of Motion and Motion for the Award of Litigation Expenses and so certified that pleading. . . . [Approved] cannot confirm that the notice and motion were included in the June 11, 1999 Federal Express packet as intended and as believed and it is possible that a clerical error resulted in their inadvertent omission.

Appellees' Br. at 16 n.4. Additionally, counsel for another party submitted an affidavit stating that he was not served with the motion until September 27, 1999.

Importantly, though, Rector and the Trust's opposition to the motion for sanctions argued only that they conducted an appropriate pre-filing investigation. They did not argue that the motion failed to comply with the 21-day "safe harbor" provision of Rule 11.

On January 14, 2000, the district court entered a Memorandum Order granting Approved's motion for sanctions and attorney's fees and ordering Rector and the Trust to pay Approved $33,503.82. *Rector v. Approved Financial Corp.*, Civil Action No. 99-499-A (E.D. Va. Jan. 14, 2000). On appeal, though, this Court vacated and

remanded the suit, explaining that the district court applied an incorrect standard in assessing the amount of the sanction. *Rector v. Wykle*, 230 F.3d 1353, 2000 WL 1294238 (4th Cir. 2000) (unpublished). The Court vacated the district court's judgment and remanded the matter "so that the district court may apply the proper standard in assessing the Rule 11 sanctions." *Id.* at *1. Notably, on appeal, Rector and the Trust did not argue that the sanctions motion failed to comply with the Rule's "safe harbor" provision.

During Rector's deposition following remand, he testified that the Trust contained assets of "something over" $1,000,000, that he is the Trust's sole income beneficiary, and that the Trust pays him two distributions annually in an amount equaling twelve percent of the Trust's assets. Rector testified that he received approximately $230,000 in income distributions from the Trust in 1999, received approximately $100,000 on June 30, 2000, and would receive the same amount on December 31, 2000. Rector testified that he also has several checking and savings accounts in a combined amount of approximately $163,000, and that he owns his home and a condominium in Florida. He pays approximately $2,000/month on the home mortgage and approximately $450/month on the condominium mortgage, which represent his only liabilities. Rector further testified that he is not married and has no financial dependents, and that the Trust similarly has no significant liabilities.

On this record, and without any argument by Rector or the Trust about Approved's service of the Rule 11 motion, the district court once again imposed a sanction of $33,503.82. *Rector v. Approved Financial Corp.*, Civil Action No. 99-499-A (E.D. Va. January 4, 2001). In its January 4, 2001 Memorandum Opinion, the district court explained that

> [t]he dismissal of the Complaints in their entirety, the finding of Rule 11 liability for frivolous claims and the finding that the attorney's fees and costs sought were reasonable, supports this award of sanctions under Rule 11. In view of Rector's deposition concerning his and the Trust's ability to pay and the continuing litigation in state court after imposition of the sanction, it is clear that all of the elements of the

*[In re] Kunstler*[, 914 F.2d 505 (4th Cir. 1990),] analysis have been met and the amount of the sanction is appropriate.

## II.

A district court's decision to impose Rule 11 sanctions is reviewed for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400-01 (1990). Thus, we review the district court's factual findings for clear error, *id.* at 401, and its legal conclusions *de novo*. *Id.* at 402.

The only meritorious argument raised in this appeal is whether the 21-day "safe harbor" provision of Rule 11 is a non-waivable jurisdictional rule. Under Fed. R. Civ. P. 11(c)(1)(a), a Rule 11 motion for sanctions "shall be served [on the opposing party] but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . ., the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." The Rule further provides that the motion "shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate" the Rule. Fed. R. Civ. P. 11(c)(1)(a).

Congress amended Rule 11 in 1993 by adding the 21-day "safe harbor" provision. The primary purpose for this amendment was to provide immunity from sanctions to those litigants who self-regulate by withdrawing potentially offending filings or contentions within the 21-day period. *See, e.g.*, *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997). The Advisory Committee Notes to Rule 11's 1993 Amendments explain that the

> provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely with-

> drawal of a contention will protect a party against a motion for sanctions.

Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments). Through this self-regulation, the amendment also worked "to reduce the number of motions for sanctions presented to the court." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).

Several courts have termed the "safe harbor" provision "mandatory" or an "absolute requirement." *See Ridder*, 109 F.3d at 294 (safe harbor provision is "absolute requirement"); *Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1529 (10th Cir. 1997) (safe harbor provision is "mandatory"); *Elliot v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (same); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2nd Cir. 1995) (reversing sanctions award in part because no evidence indicated compliance with safe harbor period); *Thomas v. Treasury Management Ass'n*, 158 F.R.D. 364, 369 (D. Md. 1994) (finding that failure to comply with the "absolute[ ] prerequisite" of the safe harbor provision precludes imposition of sanctions).

While these cases may stand for the proposition that the safe harbor provision is mandatory, they do not stand for the proposition that it is jurisdictional.[1] Not only do the cases fail to define the requirement as a rule of jurisdiction, but nothing in the language of the Rule supports such a conclusion. While Rule 11 does, indeed, state that a sanctions motion "*shall* be served" at least 21 days before it is filed, the Rule also states that the motion "*shall* be made separately from other motions" and "*shall* describe the specific conduct" violating Rule 11. Fed. R. Civ. P. 11(c)(1)(a) (emphasis added). Neither Rector nor the Trust contends that federal courts lack jurisdiction over Rule 11 motions that are not "made separately from other motions" or those that do not "describe the specific conduct" purportedly violating Rule 11. The use of the word "shall" is not determinative to this analysis.

Further evidence that the safe harbor provision is not jurisdictional is found in the Advisory Committee Notes accompanying Rule 11. The Notes explain that the safe harbor provision was added to Rule

---

[1]Despite its assumptions to the contrary, the dissent concedes that none of these cases held the safe harbor provision jurisdictional. *Post* at 13-14.

11, in part, to help reduce the number of sanctions motions filed in the courts. The number would be reduced not by narrowing the courts' jurisdiction, but by giving litigants a specific amount of time in which to withdraw an offending filing or allegation before a motion is filed. As the Notes explain, "[u]nder the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions." Fed. R. Civ P. 11 Advisory Committee Notes (1993 Amendments). This, in turn, would "reduce the number of motions for sanctions presented to the courts." *Id.* Nothing in the Advisory Committee Notes suggests that the number of motions filed would be reduced by narrowing the power of the federal courts to address such motions. The Notes simply do not address the courts' authority to entertain Rule 11 motions, regardless of whether the motions were filed in compliance with or in violation of the safe harbor provision.

An analogy can be drawn to the statutes of limitation context. A statute of limitation requires a litigant to file a claim within a specified period of time. If the litigant files the claim after the time period expires, the defendant may assert the statute of limitation as an affirmative defense. Importantly, the litigant's untimely filing does not preclude the court from addressing the claim; the court does not lack jurisdiction simply because the litigant filed an untimely claim. Rather, the court may address the claim, limited only by the defendant's assertion of a statute of limitation defense. Moreover, the defendant may waive the defense by failing to raise it.

Similarly, a movant filing under Rule 11 must serve the motion at least 21 days before filing it with the court. If the movant files the motion less than 21 days after giving notice, the party against whom the motion is filed may assert the 21-day safe harbor provision as a defense. Should the litigant fail to do so, the defense is waived.

A distinction, on the other hand, can be made with Fed. R. App. P. 4, which states that, "[i]n a civil case . . . the notice of appeal . . . must be filed with the district court clerk within 30 days after the judgment or order appealed from is entered." Courts clearly consider the Rule's 30-day limitation "mandatory and jurisdictional." *Browder*

*v. Director, Dep't. of Corrections*, 434 U.S. 257, 264 (1978); *Shah v. Hutto*, 722 F.2d 1167, 1167 (4th Cir. 1983) (*en banc*). No court, though, has used such language to describe Rule 11's safe harbor provision, instead calling it merely "mandatory" or an "absolute prerequisite."

Moreover, a significant difference exists between Fed. R. App. P. 4 and Fed. R. Civ. P. 11. Rule 4 "set[s] a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands." *Browder*, 434 U.S. at 264 (quoting *Matton Steamboat Co. v. Murphy*, 319 U.S. 412, 415 (1943)). Rule 4 allows for finality by requiring the filing of a document with the court within a specific period of time. Rule 11, on the other hand, does no such thing, merely instructing litigants about the time periods involved in the service and filing of a motion for sanctions.

Accordingly, we hold that the 21-day safe harbor provision of Rule 11 is not jurisdictional and may be waived.[2] Here, it is undisputed that

---

[2]Even if we were to find the safe harbor provision a jurisdictional rule, we nonetheless would find it waivable. While subject matter jurisdiction "delimits federal-court power" and serves institutional interests by "keep[ing] the federal courts within the bounds" prescribed by the Constitution and Congress, it "must be policed by the courts" at all times and, thus, is not waivable. *Ruhrgas, AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). On the other hand, personal jurisdiction restricts a court's jurisdiction over the person, "protect[ing] individual rights." *Id.* Personal jurisdiction "represent[s] a restriction on judicial power . . . as a matter of individual liberty." *Id.* at 584. Thus, "a party must insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority." *Id.* (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Accordingly, personal jurisdiction is waivable. *Id.*

Here, the safe harbor provision was added to Rule 11 primarily to provide litigants the opportunity of avoiding sanctions by withdrawing offending filings or contentions within the 21-day period and, thereby, reducing the number of sanctions motions brought before the courts. *See, e.g.*, *Ridder*, 109 F.3d at 294. Thus, the provision protects litigants; it does not establish a structural limitation on the power of the courts. Accordingly, it was incumbent upon Rector and the Trust to "insist that the limitation be observed, or . . . forgo that right[.]"

neither Rector nor the Trust objected to Approved's service of the Rule 11 motion until the case reached this Court on its second appeal, after remand.[3] Neither Rector nor the Trust raised the argument to the district court in the first instance nor raised it to this Court in their first appeal. When presented with that appeal, we vacated the district court's opinion and remanded solely "so that the district court may apply the proper standard in assessing the Rule 11 sanctions." *Rector*, 2000 WL 1294238 at *1. Our remand order did not allow the district court to consider any issue other than the proper assessment of the sanction amount.[4] Rector and the Trust's failure to raise Approved's failure to comply with the 21-day safe harbor provision in the district court in the first instance constituted a waiver of this argument.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.[5]

*AFFIRMED*

---

[3]The dissent refers to Rector and the Trust as "hapless" victims, *Post* at 10, without any fault for any of the judicial events occurring after June 11, 1999, the date on which Approved purportedly served its Rule 11 motion. *Post* at 14, 16. In fact, Rector and the Trust are primarily at fault for virtually every event that occurred after that date. Had they merely notified the district court on or after September 27, 1999, when Approved filed its Rule 11 motion, that Approved failed to comply with the safe harbor provision, every event that occurred thereafter (including this appeal) could have been avoided.

[4]Curiously, the dissent fails to even mention our previous opinion in this case, *Rector*, 2000 WL 129438, which reviewed the merits of the sanctions award and remanded and vacated the decision on the sole issue of the amount of the sanctions award. Following remand, the only issue before the district court, and before this Court on appeal, is the calculation of the sanction amount, not the propriety of the sanction award.

[5]We have reviewed Rector and the Trust's remaining arguments and find them to be equally without merit.

KING, Circuit Judge, dissenting:

Stripped to its essence, the question before us is not whether a party may defeat a motion for Rule 11 sanctions by complaining it has received insufficient notice of the proceeding against it, and therefore no meaningful opportunity to cure the alleged defect in its submission to the court. The language of the Rule is plain, and the majority does not contend otherwise: "A motion for sanctions under this rule . . . *shall not be filed with or presented to the court* unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A) (emphasis added).

Rather, the question is whether any action (or inaction) on the part of the party against whom sanctions are sought can somehow justify disregarding Rule 11's mandatory "safe harbor" provision, thereby vitiating the institutional protections it affords. In this case, the majority penalizes a hapless plaintiff for invoking the Rule only belatedly. As a result, the defendants' counsel — who was at least as much responsible for protracting the unfortunate proceedings below — not only escapes sanction for his lack of diligence, but delivers his clients a windfall. Because I cannot subscribe to the "ignore it and hope it goes away" approach advocated by the defendants and adopted by the majority, I am constrained to dissent.

I.

It is, admittedly, difficult to marshal a meaningful response to the majority's implacable decree that the elementary command "shall not" means something other than what it manifestly says. How should one acknowledge the dawning reality that "[r]ed is grey and yellow white?"[1] I have no facile answer.

It is not as if others have paved the way gradually for the majority's frolic into Wonderland.[2] Up to now, every court that has

---

[1]"But *we* decide which is right. And which is an illusion." Graeme Edge, The Day Begins/Late Lament, from the Moody Blues' recording Days of Future Passed (Deram Records 1967).

[2]I do not intend my glib hyperbole to convey the impression that my fine colleagues in the majority — for whom I have profound respect and

addressed the safe harbor provision has, in no uncertain terms, confirmed its gatekeeping aspect. *See Ridder v. City of Springfield*, 109 F.3d 288, 290 (6th Cir. 1997) (Rule 11 sanctions imposed against plaintiff's counsel disallowed for city's failure to comply with the safe harbor's "explicit procedural requisite"); *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (plaintiffs' non-compliance with "procedural prerequisite" of safe harbor provision required reversal of fees assessed by district court against defense counsel pursuant to Rule 11); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995) (sanctions under Rule 11 improperly imposed on plaintiff and his counsel where "specific mandate" of safe harbor provision ignored).[3]

---

admiration — have given this case anything less than their most thoughtful and serious consideration. The majority's disregard of the prohibition "shall not," however, brings to mind a famous encounter between a little girl and a certain ovoid character (reputed to be prone to clumsiness):

> "When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean — neither more nor less."

> "The question is," said Alice, "whether you *can* make words mean so many different things."

> "The question is," said Humpty Dumpty, "which is to be master — that's all."

Lewis Carroll, Through the Looking-Glass and What Alice Found There 123 (The MacMillan Co. 1899) (1862).

[3]*Accord Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (citing *Elliott* and *Hadges* in reversing Rule 11 award against plaintiff's counsel where defendant failed to comply with safe harbor provision, noting that "[a]n award of sanctions cannot be upheld under those circumstances"); *Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir. 1997) (citing *Elliott* and affirming magistrate judge's refusal to award fees to defendant "because the record failed to establish compliance with Rule 11's cure provision," *id.* at 1529); *cf. Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1026 (7th Cir. 1999) (citing *Ridder* and *Barber* for the proposition that safe harbor provision "is not merely an empty formality").

The impressive array of circuit authority cited above has, cumulatively, been followed dozens of times by the lower courts within those jurisdictions. District courts in other circuits, unconstrained by binding

Nor could the majority have taken its cue from a higher authority. As the Supreme Court has noted time and again, "[t]he word 'shall' is ordinarily 'the language of command.'" *Alabama v. Bozeman*, 121 S. Ct. 2079, 2085 (2001) (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (quoting *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935))). In *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), the Court observed that "the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." *Id.* at 35 (citing *Anderson*).[4]

The majority nonetheless imagines a hairline fracture in that otherwise impermeable shield, *see ante* at 6, distinguishing a rule that is "mandatory" from one that is "jurisdictional" (the latter, one might surmise, means "really" mandatory). Hence, time limits for appeals must be observed, but time limits for claims need not; jurisdiction over the person can be waived, but jurisdiction over the subject matter cannot. *Ante* at 7-8 & n.2. The safe harbor provision of Rule 11 is, according to the majority, more like statutes of limitations and per-

---

precedent, have nonetheless uniformly arrived at the same conclusion. *See Vandanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1053 (D. Minn. 2000) (adopting recommendation of magistrate judge that Rule 11 motion be denied because movants had not fulfilled safe harbor prerequisite: "[a]dequate time is . . . required for the [offending] party to correct its improper conduct, before such serious sanctions would be warranted"); *Omega Sports, Inc. v. Sunkyong America, Inc.*, 872 F. Supp. 201, 203 (E.D. Pa. 1995) (plaintiff's failure to comply with safe harbor provision rendered any award of sanctions against defendant "unwarranted"); *Thomas v. Treasury Mgmt. Assoc., Inc.*, 158 F.R.D. 364, 369 (D. Md. 1995) (noting that compliance with safe-harbor provision "is absolutely prerequisite").

[4]Although the Court's use of the words "ordinarily" and "normally" appear to contemplate an occasional deviation from the rule, there is nothing abnormal or out of the ordinary about the safe harbor provision. There are a few well-established exceptions to the mandatory nature of "shall," *e.g.*, *Brock v. Pierce County*, 476 U.S. 253 (1986) (holding that government agencies are not necessarily divested of power to act after specific date by which statute commands that particular action "shall" be taken), but, up to now, none could be found in Rule 11.

sonal jurisdiction, and less similar to appeal deadlines and subject matter jurisdiction.

Although the majority correctly recites the black-letter law, it misperceives the method behind the seeming madness. An untimely claim may or may not be stricken, it is true, but a court cannot rule either way until suit is filed. A party (or an entire action) might be dismissed for lack of jurisdiction, but, absent a lawsuit, we may only hypothesize. The point is that nothing prevents a party from filing an otherwise valid complaint with stale claims, or against persons outside the court's reach, or even in the wrong court. In each case, the district court is authorized to determine its own jurisdiction, rendering any facts relevant to the question appropriate for judicial consideration.

By contrast, in accordance with the plain language of Rule 11, a motion for sanctions cannot be properly *filed* or *presented* to the court — period — unless the movant has complied with the safe harbor provision. This is not to say that such motions are not, in actuality, physically filed or presented; they obviously are. The court, however, has no initial authority to rule upon the merits of the motion, or to consider any collateral fact (such as waiver) ostensibly bearing on the propriety of its filing, apart from ascertaining whether the safe harbor provision (or another of Rule 11's procedural requisites) has been ignored. If the answer to this inquiry is in the affirmative, the motion's filing is, in effect, a nullity.

In this sense, the safe harbor provision is much like the "mandatory and jurisdictional" time limits imposed on the filing of appeals by Rule 4 of the Federal Rules of Appellate Procedure. *See Panhorst v. United States*, 241 F.3d 367, 369-70 (4th Cir. 2001) (quoting *Browder v. Dir., Dep't of Corrections*, 434 U.S. 257, 264 (1978)). Except as specifically provided by Rule 4, these time limits cannot be expanded, equitably or otherwise. *See id.* at 370 (district courts possess "no authority to extend the filing period"). The majority distinguishes the safe harbor provision from Rule 4, *ante* at 7-8, based on its view that no court has specifically invoked the mantra "jurisdictional" in connection with the former.

I am not persuaded. In *Ridder*, the Sixth Circuit noted the presiding magistrate judge's observation, inter alia, that the safe harbor "re-

quirement does not appear to be jurisdictional." 109 F.3d at 292. The *Ridder* court took no specific issue with this statement, contained as it was within a larger excerpt, but we may reasonably assume that its accuracy was called into serious question by the very fact of reversal. And there is little doubt in my mind that had the question been framed in jurisdictional terms, the Sixth Circuit — and every other court that has addressed the issue — would hold that no jurisdiction exists to entertain a motion for Rule 11 sanctions absent compliance with the safe harbor provision. The majority's decision therefore creates a split in authority with at least five other circuits and a host of district courts. *See supra* note 3 and accompanying text.

## II.

I understand and share the majority's consternation with a plaintiff who would file a complaint with scant basis in law or fact, seeking to recover "an infinite amount of money." But Rector does not deserve to stand alone against the full force of the majority's wrath. Had counsel for the defendants actually served Rector with the motion for Rule 11 sanctions — *as he erroneously certified to the court that he had* — Rector might have withdrawn his complaint, thus avoiding the entire mess.

Consider just a partial list of what occurred in this case after June 11, 1999, the date on which Rector was, according to the erroneous Certificate of Service accompanying the motion, purportedly made aware that the defendants were seeking expenses and attorneys' fees pursuant to Rule 11:

- July 2, 1999 - Court hearing on Rector's motion to bifurcate and defer RICO pleading issues

- July 22, 1999 - Court hearing on defendants' motion to dismiss

- July 23, 1999 - Complaint dismissed

- August 6, 1999 - Amended Complaint filed

- September 17, 1999 - Following court hearing, Amended Complaint dismissed

- September 27, 1999 - Motion for sanctions filed

- October 22, 1999 - Court hearing on motion for sanctions

- January 14, 2000 - Motion granted and sanctions awarded

- January 21, 2000 - Notice of appeal filed

- September 14, 2000 - Our opinion issues, vacating award of sanctions and remanding cause

- October 10, 2000 - Judgment on appeal received in district court

- December 15, 2000 - Court hearing on renewed motion for sanctions

- January 4, 2001 - Sanctions again awarded

- January 29, 2001 - Notice of Appeal filed

- June 6, 2001 - Oral argument heard

J.A. 6-10B.

Of course, most of the above proceedings entailed complex written submissions from the parties, obliging the court to read and contemplate each one. In light of all this, the majority's assertion that the safe harbor provision may be waived because it primarily "protects litigants," with less regard for institutional interests, *see ante* at 8 n.2, is baffling. Rule 11 could and should have fulfilled its overriding institutional purpose in this case by conserving the valuable time and

resources of two federal courts. It did not, in fact, serve its intended purpose here, but that was through no fault of Rector.[5]

### III.

No award pursuant to Rule 11 ought to be made to the defendants in this case, because their counsel failed to comply with the Rule's safe harbor provision prior to filing the motion for sanctions. The majority, unwilling to adhere to the firmly established concept that "no" means "no," holds to the contrary.

I respectfully dissent.

---

[5]I make two brief points in response to the assertions of my friend Judge Gregory in footnote 4 of his majority opinion. *Ante* at 9 n.4.

First, imagine, if you will, we discovered on this appeal that we lacked subject matter jurisdiction. We would be compelled to dismiss, despite not having addressed the issue in the earlier appeal. The law of the case doctrine "does not apply to issues not addressed by the appellate court." *United States v. Lujan*, 243 F.3d 1181, 1186 (9th Cir. 2001).

Second, if we assume, arguendo, that the majority properly characterizes our initial remand as a limited one, the district court on remand could appropriately have determined the amount of the sanction award to be zero, given the utter failure of the defendants to comply with the Rule 11 safe harbor provision.